as parent of PJS Good morning, Your Honors. May it please the Court. My name is Christine Barrington, and I represent Joanna S., the appellant in this case. This case comes before this Court on appeal from a decision of the Rhode Island District Court involving a dispute over the Individuals with Disabilities Education Improvement Act, or IDEA, as well as a review of the administrative proceeding relative to. At this time, I'd like to defer substantially to the facts of this case. They're set forth fully in the briefs of both parties. I will address some specific facts in turn, unless the Court has any specific questions relative to. And begin this oral argument by saying that I stand before this Court today for the proposition on behalf of my client that education is important. It matters. It matters so much, especially for children with disabilities, that IDEA safeguards that importance, including, in particular, the child's need for or entitlement to comprehensive evaluation. Comprehensive evaluation, which is the mechanism to identify any adverse effects as a result of that disability, as well as to serve the basis for reasonably calculating the IEP. This child's entitlement or need for that comprehensive evaluation, I believe or suggest to this Court, is at the heart of this matter. But before addressing that in particular, this Court needs to first, I would suggest, address the issues of whether or not the April 2012 settlement agreement and the principles of raised judicata bar, in fact, the parent's request for those evaluations at an October 2012 IEP team meeting. I'd like to hear from you why you think it doesn't. The school argues that it does by reading paragraph enumerated number two in isolation, and in particular, to the exclusion of the umbrella introductory paragraph that specifically and expressly provides that the waiver runs only through the date of the agreement. We would argue the converse, that the settlement agreement should be read as a whole, that paragraph number two may arguably omit specific language that the umbrella introductory second paragraph does not, namely that the parties waive agreements through the date of the agreement, but that reading that in isolation of the rest of the agreement or to the exclusion of the umbrella introductory paragraph is an unfair interpretation and contrary to what this jurisprudence has established as fair contractual interpretations. Counsel, help me on context here. As I understood it, there was an ongoing dispute resulting in administrative procedures regarding what tests your client's child would receive in the coming time period. Your client wanted more tests and different tests than the school district was willing to provide? Respectfully, Your Honor, it is our position that there was not an ongoing dispute. The U.S. District Court terms a first due process proceeding and a second due process proceeding. It is our position that those were separate proceedings and that the underlying substantive basis for the parent's proposed resolution in the first due process and the parent's subsequent request for evaluations at an IEP meeting had different bases. Before the settlement agreement was signed, am I correct that your client wanted something that the school district had not yet committed to give until it was signed? That is correct, Your Honor. There were discussions leading up to that where she wanted things, they said no, but you eventually reached an agreement. That is correct, Your Honor. And in that lead up to the agreement, I had understood that one of the subjects of discussion was what tests would be administered to the child. That is correct, Your Honor. So when they then get a settlement and the settlement refers to certain tests that will be taken and one that will not and covers a time period of, I guess, what, a year and a half? Why wouldn't we find that the parties had kind of reached an agreement as to what tests were going to be done? I will defer in substantial part to that question to my brief, but I will try and narrow it down and explain to Your Honor my position relative to it. The settlement agreement is very clear in its terms and conditions, minus, I would say, an inadvertent omission and enumerated power of attorney. And I think it's important in paragraph number two to restate, I mean, it's almost in essence verbatim, the second introductory paragraph. It just inadvertently, I suggest, omits that expressed language weaving claims only through the date of the agreement. That, the settlement agreement, granted the parties agreed that the school would support a placement into a future prospective time period, but that does not also mean and paragraph number two, and it's not expressed in the agreement, waives the school's affirmative responsibility regardless to provide FAPE. It's, the school has to provide FAPE under IDEA or Rhode Island laws and regulations that adopt that. Was there any new medical information or material change in the child's condition after the settlement agreement was signed? We argue, in fact, yes, there was, that there was a series of occurrences or transactions that happened subsequent to the execution of that settlement in April agreement that either part and parcel or in whole thereof could arguably serve as a reasonable basis for additional requests of evaluations. And I would just offer this analogy that in claims of negligence, tortious claims of negligence, you raise the claim of negligence. I would suggest that in education or school practice law, one requests evaluations. I'm sorry, could you stop the clock for a second? Because it's going to mess up the recording. It's something that's beeping, but it's going to get picked up on the microphone. Do you see anything? Yes, the server. Oh, the server. It's going to affect the recording. I will take a quick recess. All rise. Get your stuff. Get your stuff. Don't sit there. Okay. Give counsel another minute and a half since we interrupted our train of thought. Okay, go ahead. Thank you. I believe that I was discussing whether a new set of circumstances or transactions occurred after the parties entered into the settlement agreement. Point us specifically in the record what you're pointing to that would show a material change that came up after the settlement agreement. Well, we list out several of them, but in particular, at the time the settlement agreement was entered into, the child had historical significant absences from school, but at that particular time had been wholly absent from school for about two months. By the start of the school year, September of 2012, the child had remained wholly absent from an educational program at all. And we suggest that for a child, especially a child with a disability, who was out of school for two months versus five or six months, that that is a substantial or could certainly support a substantial change in circumstances relative to that child's needs. At the time you signed the settlement agreement, you knew he was going to be out of school until the start of the next school year. Respectfully, Your Honor, no, that's not true. The settlement agreement, in fact, provides that the child will either do one of two things, begin attending school at the private placement, or receive the provision of homebound instruction. Neither one of those happened for extraneous reasons, but the child, as a result, did not participate in any kind of appropriate educational program until at least arguably the start of the 2012-13 school year. During that time period as well, and we go into quite a few more occurrences that happened, but his annual IEP had lapsed. His need and entitlement to a reevaluation, which would have included a comprehensive evaluation, had lapsed. Just going back so I understand the context for what led to the settlement agreement, she was seeking a reevaluation, your client? Is that the right way to understand what was happening? In the first due process, the parent alleged substantive denials of FAPE. And what we call, just so I understand, under the statute, are you entitled to that? She's entitled to that once a year, that challenge? No, a parent could conceivably file a claim for denial of FAPE. At any moment? Continuously? There's no repose? There's no limit on the amount of times you can? I do not believe so, Your Honor. The school is arguing, one, to read paragraph specifically enumerated, number two, in isolation. I suggest that at a minimum that there is an inconsistency between that paragraph and the umbrella secondary paragraph. And that that should not lead to the interpretation to discount what's in that umbrella introductory paragraph. The party's clear intent to only waive claims through the date of the agreement. The school then also argues that regardless, that there is an implicit waiver of its affirmative statutory obligation to provide FAPE. What the parent received as a result of the settlement agreement was a private school placement. There was no discussion. There's no language. There's no intentions that any other provision or substantive provision of FAPE was discussed or agreed to by the parties. I suggest to this Court that if the school intended or wished to have its affirmative statutory obligation, to provide FAPE to this disabled child waived by the parent, then this Court should find that clear language stating that be included in these agreements. They agreed to the four tests, though. The settlement agreement includes the tests or does not, in your view? The settlement, the parties agreed that the district would conduct four assessments. So in addition to going to the school, they also agreed there would be these four assessments. That's correct. Okay, so that, we might then read it not as a waiver of the obligation to comply with FAPE, but an agreement that FAPE was complied with. That there were certain specified parts of FAPE, a private placement and evaluation. Four tests. And the evaluation of the four tests. I guess that just raises the question then, if that's a good understanding of the agreement, how can you get a fifth test? Well, those are not the only subparts or components of FAPE. And that's where I think that the issue of the deference to the hearing officer comes into play. The hearing officer under the statute is required, mandated to have certain levels of knowledge and skill and expertise, including an understanding and appreciating applicable law and legal principles in deciding all issues relative to specialized instruction. FAPE. So I suggest that where the hearing officer would find that, yes, those two issues of a private school placement and some evaluations of the four tests, is that all of FAPE? And if it's not all of FAPE, does the settlement agreement implicitly imply, regardless, all the rest of FAPE? The hearing officer considered that specific issue on a motion to dismiss the very case the school filed the second due process and found that it did not. And I suggest and I respectfully request this court to give deference to the hearing officer's decision on that issue in consideration of her possession of specialized knowledge and competencies. On the issue of race judicata, I would just suggest to this court that the issue of similarity of claims is based predominantly in the school's argument. The similarity of nomenclature of the evaluations requested. And I believe that the cases that were cited in the brief by both sides talk about an investigation not just about what the evaluations are called, but to the underlying injury that serves as the basis for the evaluations. And the school district had the burden of proof or has the burden of proof to establish conclusively that the injury that gives rise to either one of the parents' requests for evaluations is the same. And I would suggest that it's not for some of the reasons that I listed. There was different transactions that occurred between the two due processes, but also that there isn't sufficient evidence to find conclusively that the injury was the same. The case before us talked about deference to administrative hearing officers and their decisions and fact-finding. I would just suggest the same thing and specifically point to, in this particular case, IDEA's procedural requirements for its hearing officers to have that experience and knowledge in particular to deciding these types of cases. On the issue of authority of hearing officers to order evaluations, IDEA specifically says that they can. It's one of the only, and I would suggest the only, authority that IDEA specifically gives to hearing officers to order hearing officers to do. And I believe that the U.S. District Court referenced Perry Zirkle's article on that issue. The IDEA is... We're here talking about the test she asked for in October of 2012. Yes, she requested those evaluations at an IEP meeting. It is our position that those don't rise to the level of a claim, but... Aren't those the tests we're talking about? We're talking about the same named test, but a different underlying injury giving rise to that request for those tests. It would be two instances of negligence, one for, you know, a car accident and another for, you know, an injury related to, you know, a cut or something like that. The injury is different. She's making a second request for a reevaluation. She first made a request for a reevaluation. That was the subject of the settlement agreement. Then she makes a second request for a reevaluation? Yes. Within the same year? No. Within two different school years. Okay. The first one occurred between the 11-12 school year and the second one occurred between the 12-13 school year after the child... Did they both occur in 2012? Yes. So is the year... You can have as many reevaluations, at least my understanding of the act is, as you want. You're only entitled to a reevaluation once every three years and an annual review once every year. But you can have more than that if that's what's needed. Well, I mean, they could on their own give it to you, but she's requesting it as against the school district's desire. For a second time within one school year, that's your position? Well, okay, there's two issues. One, the parent disagreed with the appropriateness of the district's evaluation and requested an IEE on those evaluations. Then there's the second issue of additional evaluations beyond the IEE. Those evaluations were never done. They were never agreed to by the parties. She had asked for those as a resolution in the first due process, but had resolved to just let that go in consideration of getting the placement over anything else. If there are no further questions... It sounds like you just said she decided to pocket everything that they said they'd give her, put it into a settlement agreement, sign it, and then turn around and ask for all the other stuff she'd been asking for that they hadn't agreed. It's a rather unusual approach to a settlement agreement. Well, she didn't pocket anything. She didn't get anything other than... She got the four tests, didn't she? Correct. But the Rhode Island District Court judge found that as part and parcel with that, and part and parcel with the act, those tests needed to be appropriate. And come October of 2012, she was of the opinion that they were not. I guess there's a couple things. That's what was agreed to. The idea was that the settlement agreement was an agreement that they were appropriate. So that's why it seems odd to them to say, well, now she doesn't think they're appropriate. Unless she was seeking a second new reevaluation, but I think she's not entitled to that within one year. I'm respectfully a little confused with the question. There's the issue of the appropriateness of the school's evaluation. She's contested. But that's what was agreed to, is that it was appropriate. I thought that was what the agreement was about. No, the agreement was that the school district would do those evaluations. Whether or not they ultimately were appropriate was left as one of those additional fate issues that even the U.S. the parent as part of the agreement said, at this time I'll withdraw my requests and move forward with just the placement. But things changed. The child changed, his needs changed substantially. Thank you, Your Honor. Any further questions? Thank you. Good morning, Your Honor. It's Mary Ann Carroll representing the South Kingstown School Department. Let me go over a little bit of the history of this case to try to put it all in perspective. In February of 2012, the parent in this case filed for her first due process. In that due process, she alleged that the South Kingstown School Department was not providing appropriate services for the child through the school department. They asked for, among other things, multiple evaluations, eight to be exact, and for not a district placement. Prior to this case going to hearing, there was a settlement agreement. And that was the settlement agreement that has been questioned of my sister and the settlement agreement that we entered into, specifically clearing up any issues we had up until that point. In that settlement agreement, we agreed that we would place the child in an audit district placement, a special education school, the Wolf School in East Providence, Rhode Island. We would not have to do a neuropsych evaluation that we had agreed to do in the past. And we agreed that we would do four evaluations for the purpose of giving the Wolf School baseline data on this child. Those evaluations, those four evaluations, were done in April of 2012. The summer came. The child did not start the Wolf School in April. The child started the Wolf School in September. And by October of 2012, the parent is now asking for more evaluations. Specifically, she's asking for 10 evaluations stating that she did not have enough information to be part of the IEP team and that she wanted to be clear on what her child's disability was. It's the district's responsibility when independent evaluations are requested that they either have to provide the evaluations or file for due process. The South Kingstown School Department filed for due process. Our first argument to the hearing officer is that these decisions had already been made in the settlement agreement of April that nothing had changed, the child had just entered school, and we should not be required to do any additional evaluations. The hearing officer, who is not an attorney, certainly knows special ed law, but is not an attorney, rejected the res judicata argument and we went to a hearing. Before you move on, counsel has indicated what she says represents change during the period between April and October, including that the child didn't receive the homeschooling that was part of the agreement. As part of the agreement, we agreed two things. We agreed that if the Wolf School would take the child, that child would immediately go to the Wolf School. If the Wolf School would not take the child and there was a medical reason for him not to go to school, we would provide him home instruction. The Wolf School did not take the child. The parents did not provide a doctor's note saying that he was medically unable to go to school. What the district did do is we offered another therapeutic placement, which the parent rejected. So my sister is right in saying that for five weeks the child did not get education, but the district did provide over the summer of 2012 an ESY program through the Wolf School where the child would be going in September. I hope that answers your question. Explain what that means, though. What kind of program are you talking about? A child that has special ed needs has a right, if there is going to be regression, to have extended school year services. And basically a school district provides to the child education over the summertime. The Wolf School had a program and the district did offer and did send the child to the summer program at the Wolf School prior to the child starting school in September at the Wolf School. So did the child attend that program? Yes. Yes, he did. And really there was no substantial change. The child had been out of school for a couple of months before we settled the due process. The child was out of school for five weeks after we settled the due process. We did provide a program at the Wolf School during the summer that he attended and then he started school in September of 2012 as a matriculating student at the Wolf School. So when the parent, again, when the due process hearing officer refused to see that some of these issues had already been litigated and denied our motion regarding the evaluations, we went to hearing. And in hearing we went over the appropriateness of our evaluations. One of the evaluations that the hearing officer found was inappropriate was the occupational therapy evaluation. In that evaluation, in order to show appropriateness, we had the school district's occupational therapists testify that the evaluation was appropriate and we had the Wolf School's occupational therapist testify that the evaluation was appropriate, but just to be on the safe side, she provided additional testing. She supplemented that. The hearing officer rejected that testimony and found that the occupational therapy evaluation was inappropriate. Yes, the occupational therapy has been appealed. We did not appeal the educational evaluation. The hearing officer also found that the educational evaluation wasn't appropriate. We didn't appeal the educational evaluation and we did let the parent get an independent educational evaluation. Just by clarification, you agree that the settlement agreement does not bar the dispute continuing about whether the occupational therapy testing was appropriate? No, I don't agree. I agree. I agree that the settlement agreement should have barred any future evaluations within the five-month period of time that we were talking about here. Including consideration of whether the occupational therapy testing was appropriate? I believe that the settlement agreement would bar any future evaluations. In terms of the occupational therapy evaluation, the parent was questioning the appropriateness of the occupational therapy evaluation. She had a right to do that, notwithstanding the settlement agreement. Any time a parent wants to request an independent educational evaluation, they have a right to request an independent evaluation of something that we did. So in our case, we had done an occupational therapy evaluation, we had done an speech and language evaluation. If the parent is questioning the appropriateness of those evaluations, then the district has one of two options. They can either just do it or they can file for due process. We filed for due process because we felt our evaluations were appropriate for the reason that they were given, which was to give the Wolf School baseline data. So once those evaluations were done, the parent had a right to request an independent evaluation. That piece, the parent had a right to request, and it's our position that the occupational therapy evaluation was appropriate, and therefore she had no right to a future evaluation under that particular occupational therapy evaluation. And that furthermore, we put the evidence in appropriate evaluation based on our occupational therapist expert and the expert from the Wolf School. So under the settlement agreement, one of the things she got was your commitment to do four evaluations. Correct. And she retained the right, did she not, that if she thought you didn't do one of those evaluations or you did it poorly, she could complain about it. Correct. The psychoeducational evaluation that the hearing office audited, we believe is barred by the first settlement agreement. Because in that first settlement agreement, again, the parent had asked for you to do those four, and we had agreed that we would not do a neuropsych, which we had previously agreed to. The psychoeducational evaluation that was ordered by the hearing office, that was requested by the parent, a mere five months after we had entered into the settlement agreement, with nothing could have changed with this child right in the settlement agreement, we're not doing a neuropsych, and we're not doing any of the other evaluations that the parent requested. The settlement agreement says she was, the language is that she gives up all claims? Yes. Any claims. Any claims that led to every issue that had come up at the point of that settlement agreement. All claims, no? Yes, all claims of any issue, if you look at paragraph two in the settlement agreement on page three, claimant hereby waives any and all causes of action and claims related to his education, which claimant knows or should have known, including but not limited to, and then it goes on, and it's paragraph two of the settlement agreement on page three. Okay, and that includes, in your view, all the, any tests beyond the four? Correct. But it does not include, she's not waiving her right to contest how one of the four tests was performed? I don't believe so. I believe she had a right to contest it, Your Honor. How are you construing an agreement that would allow us to say that the words of the agreement can be parsed that way? In the agreement, we agreed to do four evaluations. We agreed to do those four evaluations to give the Wolf School baseline data so that when this child entered, they had an idea of his disability and his educational limits and what they needed to do to provide an appropriate program for him. If the parent thought those evaluations were not appropriate, she had a right to ask for independent evaluations on the appropriateness of those four evaluations. Now, it's our position that the evaluations were appropriate, and that's why we brought it to due process, but did she have a right to ask for independent evaluations? I believe she did. Okay. Based upon the very broad language of that settlement agreement, when could she next, based on your interpretation of that, ask for more testing? Are you saying she was forever barred? No, Your Honor, I'm not saying she was forever barred. I'm saying there was a time when we had three months of the summer, nothing changed. Apparently by the beginning of October, she was already looking for more evaluations. If she wanted those more evaluations, that should have been part of our April settlement agreement, which then, again, we were putting this child in an out-of-district placement. He was going to the Wolf School. If at that time she felt that more information was needed for the Wolf School, then she shouldn't have waived her rights to those evaluations at that time. When could she next have asked? Because I'm trying to think of the policy implications of what you're saying. The parent always has a right to ask for evaluations. Again, I mean, she goes to school, she has a right, she wants more evaluations. I would entertain the fact that she would have a right to ask for them at that time. Again, remember, this settlement agreement was settling everything up until him entering the Wolf School. It's at that point she asked for more evaluations. Is the idea that 2013, the clock starts again and she can then ask for tests, or do you think that settlement agreement, if we find for you, might actually bar some of her requests in 2013? What is the end date of the agreement? I can't be specific in an end date. I can tell you that if she turned around today and asked for evaluations, she has a right to evaluations. Not withstanding the settlement agreement? Not withstanding the settlement agreement. Because we were, at the time that we were, we settled the case, I think there is a connection between this is April and we're just starting school. Nothing has changed. I think if there was a material change in facts, child's in school for a year, child's in school for six months, child's making no progress, parent would have a right to ask for evaluations. But between the time that we settled the first due process and the parent asked for evaluations, the child had been in school a month. Nothing had changed. We had just gotten them to the program. So you're not saying that, you're not giving us a hard and fast date. You're saying that there has to have been some reasonable period of time over which there's an argument that something material enough has changed. Let me give you an example. Let's say, for example, that during the summer, this child gets a brain concussion. Or this child has some kind of traumatic brain injury. At that point, there would be a material change in circumstances and certainly evaluations would be needed to see what effect that had. Nothing had changed. But is there any fact finding by the hearing officer as to whether or not the theory of change that the mother is pointing to was such a change? No, there was nothing entered into the case that showed any material change in fact. Thank you.